ChittendenJehiel Johns *vs.* Roswell Stevens and William Brewster.
January,
1830.

Where a referee, in his report, stated the facts and grounds on which he founded his
decision, and it appeared that he intended to follow the law, and decide on the
legal rights of the parties, it was held that the question of law arising upon the facts
stated in the report was properly before the court, and subject to revision.

Where A owned land through which an ancient stream of water passed, and B, own-
ing land below, through which the same stream passed, erected a dam across the
stream on his own land, which flowed the water back on A's land,—it was held
that A might recover for the injury in an action on the case.

This was an *action on the case* for erecting a dam across a
stream in Huntington, called Huntington river, and flowing the
water back on the plaintiff's land.   By the agreement of the par-
ties, and order of court, the cause was submitted to the determin-
ation of a referee, who made a report in favor of the defendants.
The plaintiff filed his exceptions to the report, but the court accept-
ed it, and rendered judgement for the defendants to recover their
costs.   The facts in the case, and the grounds on which the refer-
ee decided, were stated specially in the report, and were these:

That the plaintiff had owned, and been in possession of the
farm on which the alleged inquiry had been done about forty-two
years; which farm lay upon both sides of Huntington river;—that
the defendants owned the land adjoining the plaintiff's land next
below, and down stream, upon both sides of the river;—that at
the distance of about sixty rods from the line of the land of said
*Johns*, upon the land of the defendants, in the year 1821, they
erected a dam across the river, at which they had erected a grist
mill, and saw-mill, and carding and cloth-dressing was also car-
ried on at the same place;—that the dam was raised no higher
than was necessary for obtaining a head of water sufficient for
said works, and that they were needed for the accommodation of
the inhabitants of that vicinity.

Previous to the erecting of this dam, the plaintiff had fenced
upon, or near, the line between him and the defendants, across the
river, sufficient to prevent cattle from coming up the stream into
his land, by fastening a pole or stick of timber at each shore, and
confining them in the centre of the stream by a stake, which
would confine them in low water, but when the water rose by a
freshet, the timber would rise above the stake, and swim down
stream, but being confined at their ends, would remain until the
water had sufficiently subsided for them to be brought back and
again confined to the stake.   This fence had not been kept up
since erecting the dam, but it was the opinion of witnesses it might

CHITTENDEN,
January,
1830.

Johns
vs.
Stevens et al.

be, but not without additional expense. Further up the stream, perhaps 10 rods, the plaintiff had been accustomed to have a foot-bridge across the stream by laying a stick of timber from each shore upon a rock in the middle of the river, which before the erecting of the dam rose a little above the water, and that, since that time, the foot-bridge at that place had been discontinued, and the place for passing the river since, had been fixed some 20 or 30 rods further up. It also appeared that there was in the bed of the river a quantity of loose stones suitable for fencing, which by the depositing of gravel and sand, were somewhat covered up, and could not be taken out as conveniently as before the erecting of the dam.

It was also proved that there was a spring of water upon the westerly shore of the river of good quality, at which the plaintiff had been accustomed to get water to drink and for use in the family, and in the winter to water his cattle there;—that previous to erecting said dam, the spring could be used except in freshets, when the river would rise and flow over the spring ; but that since the building of the dam, the spring was constantly covered by the setting back of the water. It was also shown that in 1826, the defendants offered, as a compromise of this difficulty, to dig a well and make and support a fence across the river ; but the plaintiff declined to receive them as a compensation. It appeared that the land in the neighborhood had increased in value considerably since building said Mills.

It was evident to the referee that the plaintiff in consequence of the erecting of said dam, and the consequent setting back of the water, had sustained some damage, especially in the loss of the spring of water ; but when he took into consideration the importance of the privilege below, which must inevitably be discontinued and destroyed, if repeated actions could be brought by the owner above, as long as the dam should remain, he considered that in a legal point of view, the plaintiff could not maintain an action ; that it was *damnum absque injuria.*

*Mr. Thompson, for the plaintiff.*—1. The stream is not navigable. The plaintiff owns the land on both sides of it; of course, he owns the bed of it and all the rights and privileges necessarily connected therewith. The plaintiff's land and the appurtenances, including the stream which passes over it, he claims by prescription and also by grant. For wherever one may prescribe for any right, the law will presume a grant. From long usage, anterior

CHITTENDEN,
January
1830.

Johns
vs.
Stevens et al.

usage may be presumed.—*Angel on tide waters*, 88 ; *Hill* vs. *Smith*, 10 *East*, 476 ; *Eldridge* vs. *Grant and others*, 1 *Cowp.* 215 ; *Knight* vs. *Halsey*, 2 *B. and P.* 206.    And as to rights of a private nature, twenty years, and in this state, undoubtedly, fifteen of uninterrupted enjoyment, are sufficient to create an exclusive right.—3 *Sand.* 175, *(n. 2.)* ; 1 *Swift's Dig.* 110, 111.

An exclusive right may be acquired in a part of the sea and other navigable waters by long continued appropriation.—*Angel on tide waters*, 90, *Appendix*, 32 ; 4 *Burr.* 2162, *Carter et al.* vs. *Merriatt, et al.* 6 *East*, 213 ; *Weston* vs. *Alden*, 8 *Mass.* 136.    If then an exclusive right may be acquired even against the public, in *navigable waters*, the plaintiff most obviously has acquired an exclusive and inviolable right to a stream *not* navigable passing over his own land.    So absolutely is this stream private property that he has the exclusive right of passing over it, and of building bridges for that purpose ; and any other person passing over, or through it, would be a trespasser as clearly as in passing over any other part of his farm.    This doctrine is not at war with the principle which forbids the owner to divert or interrupt a water course.    The stream can only be used in a reasonable manner, and as it has been accustomed to be used.—*Brown* vs. *Best*, 1 *Wils.* 174 ; 3 *Black. Com.* 218.

The rights and obligations of the plaintiff and defendants are reciprocal, and if either departs from his accustomed usage, he must so conduct as not to injure the other.    The spring is parcel of the plaintiff's estate, and in every sense private property, and wholly exempt from the common claims and rights connected with a stream of water.

2. The question then arises whether the defendants can encroach upon these private rights of the plaintiff with impunity ? Can he inflict a serious injury, and is the plaintiff remediless ? The public may, it is true, divest an individual of his property, but not without an equivalent.    His private property, moreover, can be taken only for public purposes.    Private rights are held sacred and inviolable by the constitution ; and this inviolability results from the very nature of the social compact.    The defendants have invaded the plaintiff's rights for their own personal benefit, and yet resist a claim to compensation for the injury inflicted.    If the defendants have the legal right to visit this injury upon the plaintiff, what is to limit the extent of it ? The doctrine embodied in the report of the referee is, that the defendants had the right to raise their dam as high as was necessary to effect the object

they had in view. If so, then, had the plaintiff built a valuable
bridge previous to the erection of the mill, he must have submitted to its destruction. He must also submit to the overflowing of
his farm, and even his house, when it becomes necessary to the defendants' protection of their interests. A doctrine so absurd and dangerous, cannot be sound. The doctrine that every one must so use his own as not to injure others, furnishes a salutary rule applicable to the present case. The established rule is that the owner of the soil over, or by, which a stream passes, must so erect his dam and use the water as not to injure his neighbor below.—*Sacrider* vs. *Beers*, 10 *Johns.* 241 ; 17 *Johns.* 306 :—and his neighbor above is entitled to the same exemption from injury. It is no answer to the plaintiff's claim that he is presumed to have purchased with reference to the future erection of the mill and dam, and the necessary consequences resulting therefrom. He might have relied upon the presumption that a mill privilege which could not be enjoyed without manifest injury to adjoining proprietors, could not lawfully be used at all. Besides he might well presume that by long prior occupancy, he should acquire an exclusive right—such right as the defendants would have acquired, had they erected their dam forty years before the plaintiff's occupancy. What better right had the defendants to overflow and destroy the plaintiff's spring of water, than build their house so near the plaintiff's ancient house, as to obstruct his ancient lights ? A spring may become ancient within the spirit and meaning of the law, as well as a house, and both become thus ancient by less than twenty years occupancy.—3 *Black. Com.* 218 ; 1 *Swifts Dig.* 521 ; 3 *Wils.* 461.

3. It may be contended that the defendants are not liable because their mills are beneficial to the public. This consideration can never be taken into account in a controversy between individuals in relation to a stream in which the public has no interest, over which he has no controul. The defendants cannot shield themselves under the plea of public benefit in a case where the public has no interests or rights. The public can intefere with private rights only for public purposes and upon the payment of just damages. The law, therefore, will not permit the public to derive an advantage by shielding an individual from his just responsibilities. Should the plaintiff build a dam across the stream so high as to divert its course, he could not be indicted for a nuisance, for the very obvious reason that the public has no interest in the stream ; and no *public* right would be, thereby infringed.

CHITTENDEN, It would be absurd to take into consideration  public convenience
January,
1830.   in settling a controversy between individuals in  regard to private
Johns   property, in a case where the object  of the party  complained of
vs.   is wholly personal.    In the case of the *King* vs. *Russell et al.* 6
Stevens et al.
*Barn. and Cress.* 566 ; (13 *C. L. R.* 254,) which was indictment
for a nuisance in the river Tyne, the jury were directed to inquire,
whether the act complained of as a nuisance, was for a *public* pur-
pose, and produced a *public* benefit.   The indictment,  as  was
necessary, alleged the river Tyne to be an *ancient* river, and the
king's ancient common and  public highway.   Had  the  stream
been private property, the defendants could not have  been pro-
tected under a plea that the  public  was benefitted.    There can
be no case found, where such an argument has prevailed.

*Adams  and  Bailey, for the  defendants.*—1.  The defendants
contend   that  it is  an established rule that the court will not set
aside the report of *a referee* unless the party attempting to impeach
it convicts the referee of *gross  partiality* or *corruption,* or  shows
that he was mistaken in point of fact—though a report of *auditors*
would be set aside for a mere *error  in  law.*—*Sawyer* vs. *Doane
et al.* 1. *Aik. Rep.* 138.—If the rule which prevails in chancery
in regard to awards of arbitrators he adopted, it will not be found
to sustain the present motion.   The only grounds for setting aside
an award in that court are, that the arbitrators (or referees) have
awarded what was out of  their power, corruption, or,  that they
have acted contrary to  the  principles of  natural justice, though
there is no corruption—or that they have proceeded upon a mere
mistake *which they themselves admit* ; otherwise, though the  mis-
take be palpable, the court  cannot on motion relieve.—2 *Madd.
Chan.* 556.   So, though it has been holden in  one or two cases
that a bill may be filed in equity for relief against a mistake in law,
or in  fact, of arbitrators, yet if a question of law be directly refer-
red to them, or if the question or matter be a doubtful point of law,
which the arbitrators have decided, and  the court on great delib-
eration should be of a different opinion, the award will be good.—
1. *Madd. Chan.* 65 ; 2 *Atk.* 494.   At law, the court  will not
enter into an examination of the merits, on a  motion  to set aside
a report of arbitrators, (or referees,) without evidence of dishon-
esty or corruption.—*Lucas* vs. *Wilson,* 2 *Bur.* 701. It is a  trite re-
mark,but one founded in the strongest reason,that  an arbitration or
reference is a *court selected  and constituted* by the parties, and the
objects or advantage to be gained by the submission are a saving

of expense and speedy and final termination of the controversy. It manifestly corresponds then with the intention and expectation of the parties, and the policy of the law, that, *while the arbitrators act in good faith*, their decision should be conclusive.

2. All streams are *quasi publici juris*, and the rights of the public are limited only by the capacity of the stream. The rights of those owning land on the banks of streams are inversely as the rights of the public. By the common law navigable streams belong exclusively to the public. In this country all such streams and bodies of water as are capable of general use are public property. But private streams are by the common law under the servitude of the public, as for a common highway; or in other words, the public have a right to use all streams according to their capacities. The interest of those owning the banks is not confined to so much of the stream as is contiguous to the banks, but they have a sort of undivided and common interest in the whole stream both above and below.—*Brown vs. Best*, 1 *Will.* 174; *Colbourn et al. vs. Richards*, 13 *Mass.* 420. Johns has no right except in common with others of any thing below the ordinary banks of the river.

If there were any damages in this case they are too small to be the subject of judicial investigation. But the erection of the defendant's dam and works has not lessened the plaintiff's property. Johns can claim nothing by any priority of possession.—*Palmer vs. Milligan*, 3 *Caines*, 307; *Platt vs. Root*, 15 *Johns*. 213.

Every grant, whether of property or privilege, involves within it a grant of all those means necessary to a legal and perfect improvement. Every grant of a mill privilege implies the right to raise the water sufficiently high for the purposes of the grant. A subsequent purchaser of land above a dam could not sue for any damage done to his land. Now as the right of the mill owner does not depend on prior occupancy, we have a right to infer that all grants of land on streams where mill privileges abound are made subject to a fair use of those privileges. Every one having a mill privilege has a right to a fair participation in the uses of the stream; and if in the exercise of this right those above are in some degree affected, they must submit to it.—*Hatch vs. Dwight*, 17 *Mass.* 296; *Merritt vs. Brinkerhoff*, 17 *Johns*. 306; *Miner vs. Holger*, case at *Guildhall.*

If one in the exercise of a lawful right occasions any incidental damages to another, no action will lie. It is *damnum absque injuria*. To this point the above cases may be cited; also *Thurston vs. Hancock*, 12 *Mass.* 229; *Callender vs. Marsh*, 18

CHITTENDEN, *January,* 1830.

Johns *vs.* Stevens et al.

PP

CHITTENDEN
January,
1830.

Johns
vs.
Stevens et al.

*Mass.* 418 ; *Weston* vs. *Alden*, 8 *Mass.* 136 ; 1 *Com. Dig.*
305. This principle is also recognized by *Judge Archer* in the
case of *Barron and Craig* vs. *Mayor and City Council of Bal-
timore, American Jurist, no. 4, p.* 203.

PRENTISS, Ch. J., pronounced the opinion of the Court.—It is
provided by statute, that when a cause pending in court is refer-
red, by agreement of the parties and a rule of court, the report
of the referees shall be returned to the court granting the rule, and
be allowed and accepted, *unless sufficient cause,* in the opinion of
the court, *shall be shown to the contrary.* If allowed and accep-
ted, the court is to render judgement upon the report, and award
execution ; but if not allowed and accepted, or no report be made,
and the parties do not again agree to a reference, the cause stands
open for trial at law.—*( Comp. Stat. p.* 81, *s.* 79.*)* As the court
have power to accept or reject the report, any thing may be al-
leged against it, which would be a good ground for relief against
an award of arbitrators at law or in equity, or would be sufficient,
according to the English practice, to set aside an award, when the
submission is made a rule of court. When a referee, under a
rule of court, knowing what the law is, or laying it entirely out of
his consideration, makes what he conceives under all the circum-
stances to be an equitable decision, it is no objection to the report,
any more than it would be to an award of arbitrators, that in some
particular point it is against law ; and if the report is silent as to the
grounds of the decision,no inquiry can be had into the reasons which
influenced it. Therefore, a general report apparently good, will
not be set aside without proof, either of misconduct in the referee,
an excess of his powers, some palpable mistake in the report, or
fraud in one of the parties. But if the referee states all the cir-
cumstances of the case, and it appears that he has decided contra-
ry to law, the report, if it appears that he meant to follow the law,
will be set aside.—*(Aubert* vs. *Maze,* 2 *Bos. and Pul.* 371 ;
*Delver* vs. *Barnes,* 1 *Taunt.* 47.*)* In *Kent* vs. *Elstob,* 3 *East,*
18, it was determined, that if an arbitrator, under a rule of refer-
ence, profess to decide upon the law, and it appears from the
face of the award that he proceeded on a ground which cannot be
supported in law, the court will set aside the award. It was ob-
served by one of the judges, that the award, in such case, is wrong
on the arbitrator's own principles and view of the subject ; for if
he means to determine according to law and mistakes it, the
award is not such as he intended it to be. In *Chace* vs. *Westmore,*

CHITTENDEN,
January,
1830.

Johns
vs.
Stevens et al.

13 *East,* 357, it was held, that if the question of law does not appear upon the face of the award, the court will not enter into the merits of the decision, unless the award is shown to be so notoriously against justice, and his duty as an arbitrator, that misconduct in the arbitrator can be inferred : but *Le Blank, J.* added, that where the question of law necessarily arises upon the face of the award, there the court must take notice of it. In the present case, the referee has stated in the report the facts and grounds on which he founded his decision, and the circumstances appear to be stated specially for the opinion of the court. The referee, as the report states, considered that the plaintiff, *in a legal point of view,* was not entitled to recover ; and as it appears that the referee intended to follow the law, and decide upon the legal rights of the parties, the question of law arising upon the facts stated is properly before us, and subject to revision.

It appears from the report, that the plaintiff owned a farm, of which he had been in possession more than forty years, through which an ancient stream, called Huntington river, passed ; that the defendants, owning land below, through which the same stream passed, erected a dam, a few years since, across the stream on their own land, which flowed the water back on the plaintiff's land ; that this was a damage to the plaintiff, particularly in depriving him of a spring, which he had been accustomed to use for his family and watering his cattle ; but in consideration of the value and importance of the defendants' mills, and the injurious consequences which would result to them from repeated actions, to which a recovery against them in this case would lead, the referee considered it a case of *damnum absque injuria,* and that the plaintiff, in law, could not support his action. The amount of the damage to the plaintiff is not stated ; but we must necessarily infer that it was a substantial injury, and not trifling or inconsiderable.

The general principle with respect to the rights of proprietors of lands through which a stream passes, is, that each has an equal right to the use of the water, in its natural course, without diminution or alteration ; and neither has a right to use or obstruct the water to the prejudice of other proprietors, unless he has acquired a title to some exclusive enjoyment, by an actual appropriation and use of the water, in this state, for fifteen years, in some particular manner. This principle, however, is subject to the qualification, that each proprietor may use and apply the water, while it runs over his own land, to domestic, agricultural, and manufacturing

CHITTENDEN, purposes, provided he uses it in a reasonable manner, and so as
*January*
1830. to work no material injury or annoyance to others ; and a propri-

Johns etor below can maintain no action for the damage he may inci-
*vs.*
Stevens et al. dently suffer from such use or interruption of the water, if it is not
detained unreasonably, or let off in unusual quantities so as to de-
prive him of the use of it.　So a proprietor above can maintain
no action for an obstruction of the water below him, unless he has
sustained some actual damage.　But if his land is thereby flood-
ed, or the obstruction occasions a material injury to him, he may
maintain an action on the case for the consequential damage.
Without a grant, or an uninterrupted enjoyment for fifteen years,
a proprietor cannot obstruct the stream running through his land,
and flow the water back on the land of the proprietor above, with-
out being liable to an action.　In the present case, the plaintiff
had a right to have the water flow, in its natural course, from his
own land through the defendants' land, without obstruction to his
prejudice ; and according to all the authorities, as the flowing of
the plaintiff's land by the erection and continuance of the dam
across the stream on the defendants' land, was a material injury
to the plaintiff, he was entitled to maintain his action, and recover
the actual damages.—*(Jackson* vs. *Mordant, Cro. Eliz.* 112 ;
*Broome* vs. *Mordant, Cro. Eliz.* 112 ; *Prince* vs. *Bolton,* 12
*Mod.* 131 ; *Stowell* vs. *Flagg,* 11 *Mass.* 364.*)*　In Massachu-
setts, and some of the other states, acts have been passed, taking
away the action at common law, and giving to the owners of mills
the right to flow the adjoining lands, if necessary to the working of
their mills, subject only to such damages as shall be ascertained by
the particular process prescribed.　If public policy require that
encouragement should be given to the building of mills and man-
ufactories, and the liability to frequent actions at common law
will discourage the proprietors of mill seats in this state from buil-
ding in places where they must overflow the land of others, it
belongs to the legislature to interpose, and make such provision as
policy, consistently with justice, may require.　Until this is done,
we cannot deny to a party the remedy given him by the common
law.

　　　　　　　Judgement reversed, and cause reman-
　　　　　　　ded to the county court for trial.