## FRANKLIN LEARNED *vs.* JAMES BELLOWS.

FRANKLIN;
January,
1836.

In an action of trespass, *de bonis*, sued at the county court, where the *ad domnum* exceeds one hundred dollars, and the county court refuse to dismiss the action for want of jurisdiction, the value of the property being less than one hundred dollars, this court have no authority to reconsider the decision.

In a case refered by agreement of parties, it is no ground of setting aside the report that the referees admitted irrelevant or illegal testimony, if it had no tendency to mislead their minds, and did not in fact mislead them.

Reports of referees are not to be set aside for every circumstantial error, but only where they adopt a rule of action and misapply it; and in this respect it is immaterial whether it be a rule of law or of equity or of arithmetic.

A general release of all "demands, notes and accounts," will not be construed to include a suit pending, especially when, from testimony *aliunde*, it is apparent such was not the intention of the parties.

This case comes here on exceptions taken to the decision of the court below, in accepting the report of referees. The action was trespass, brought originally at the county court, demanding in damages more than one hundred dollars. The referees report, that there was no testimony on the part of the plaintiff tending to show the oxen (which is all plaintiff claimed) of greater value than $53 50. The defendant moved the county court to dismiss the action. The report further shows, that defendant claimed to hold the oxen by virtue of certain executions, as the property of one Joseph Learned, the defendant being a legal officer and having levied the executions upon the oxen. The defendant having given in evidence certain admissions of plaintiff tending to show, that the oxen belonged to Alanson Learned, a son of Joseph Learned, and not to plaintiff. The referees permitted plaintiff to show that, at other times and places, he had made declarations directly the reverse, these declarations not being accompanied with any act of plaintiff. The referees further report, that during the pendency of this suit, plaintiff and defendant executed to each other mutual receipts, of which plaintiff's to defendant, the following is a copy : 

"Received of James Bellows ten dollars, which is in full of all " demands, notes and accounts, up to this date.

   (Signed)           **FRANKLIN LEARNED.**"
"Fairfax, August 14, 1834."

The referees add, that "in all things they intended to decide according to law."

The report was in favor of plaintiff and accepted by the county court, and the motion to dismiss the action for want of jurisdiction overruled.

FRANKLIN,
January,
1836.

Leainard
vs.
Bellows.

*Mr. Smalley & Adams and Mr. Hubbel for defendant.*—Although referees are not bound to follow the law, yet, if they attempt to decide according to law and err, their decision will be, corrected by the court.—*Johns* vs. *Stevens et al.* 3 Vt. Rep. 303, and a case then cited by Ch. J.

"When from the writ the court *prima facie* has jurisdiction, but from the plaintiff's own showing, it appears on the trial that his debt or demand is not sufficient in amount to give the court jurisdistion, the course is to dismiss the action on motion. Such has always been the practice, and if it did not prevail, it would be in the power of the plaintiff to give the court jurisdiction in evasion of the statute, in any case, by merely declaring for or demanding a sum exceeding one hundred dollars."—*Southwick et al.* vs. *Merrill*, 3 Vt. Rep. 320. But it is said in the same case, that "in actions of tort, when the damages are uncertain and rest in the decision of the jury, the damages demanded must be the criterion of jurisdiction.

But how are the words, *"uncertaim damages"* and *"jurys' discretion,"* to be understood? There must be some limit to such phrases. For a trifling trespass, inadvertantly committed, an action might be sustained; but for such, when the actual damage does not exceed a few shillings, or at most a dollar, would a jury be justified in giving more than a hundred dollars? I think not. Neither do I think a jury would do it; and if a jury would not, can it it be competent for courts to set up a jurisdiction which no honest and rational jury can follow out, or common justice sanction? All that was meant, then, by the above expression of the court in the case cited, was, that when it was uncertain, whether a sound discretion might not say, the damages were a little less or a little more than a hundred dollars, the court would not be quibbled out of their jurisdiction. In cases like the present, there is but little uncertainty as to the amount of damages, the statute declaring that no more than actual damages shall be recovered; and the case shows that the oxen were a middling or an ordinary pair, and no witness calculated them higher than fifty-three dollars.

2. It appears from the report, that the plaintiff was permitted to show his own declarations unaccompanied by his acts, and not made in the presence of the adverse party, nor at the times spoken of by the defendant's witness. It does not require an argument to show the absurdity of such a doctrine.

3. It is insisted, that the receipt being in full of all demands, discharges the suit; for in Swift's Dig. Vol. 1, p. 300, it is said,

FRANKLIN,
January,
1836.

Learnard
vs.
Bellows.

that "the word demand is of the most extensive import, and a release of all demands discharges all manner of actions, real, personal, and mixed, rights and titles, conditions before or after breach, Executions, Covenants and Contracts." And again, p. 301 it is said that "when the parties intend to settle every matter between them, the release should use the words, *all demands :* if it is not intended to be a general release, it should comprehend only the particular matter to be discharged." If all claims except a particular one are to be discharged, the release may be general with the exception of the matter not meant to be discharged.

*H. R. Beardsley, for plaintiff.*—Three exceptions are taken to the Referees Report filed in this case.

1. That the County Court had not original jurisdiction of this cause.

2. That the Referees permitted the plaintiff to prove his own declarations, unaccompanied by his acts, and not made in the presence of the other party.

3. That the receipt referred to in the report, operated to discharge the suit.

1. As to the first exception, it is sufficient to say, that the question of jurisdiction, cannot be made to depend upon the amount of damages recovered. In all cases of uncertain damages, if the sum found in damages, be within the jurisdiction of a justice of the peace, the County Court is not thereby ousted of jurisdiction. *Gale* vs. *Bongea.* 1 Chip. Rep. 208.

2. There does not sufficient appear in the Report on which to ground this exception.

1. It does not appear that the testimony admitted by the referees had any possible bearing, or connexion, in the trial of the case, or that the referees were in any degree influenced by it.

2. Referees are not bound by the same strictness of rules, in regard to the admission of testimony, that the courts of law are.

3. The Report does not show any thing from which the Court can determine that another hearing would avail the defendant, or that the triers would not probably come to the same result, without that testimony or that any injustice has been done.

As to the last ground of exception to the Report we are unable to discover, what the Court have to do with it, until it is properly placed upon record by plea. But suppose the question aris-

11

FRANKLIN,
January,
1836

Learned
vs.
Bellows:

ing upon the receipt to be properly presented.    It has no reference
to this suit.

In the first place James Bellows has no interest in the subject
matter of this suit, except what results from being nominal defen-
dant on the record.    Beeman is the party in interest.    Hence it
is not to be supposed the parties to the receipt, had this suit in
view at the time of its execution.

Again, the words *all demands,* are limited in their operation,
by the *words notes and Book Accounts,* which serve to show
what was intended in their settlement.

It appears also that they executed mutual receipts of the same
description, which shows that they had mutual claims against each
other, different from the present suit, and the legal presumption
is, that these only were intended to be embraced in the settlement,
and covered by the the receipt.

The opinion of the court was delivered by

REDFIELD J.—The motion to dismiss the action was cor-
rectly overruled for two reasons.    It being always a matter of dis-
cretion whether the court will dismiss an action sounding in damages
merely, when the *ad damnum,* brings the case within the jurisdic-
tion of the County Court, they should not do this after a reference
and report.    And they should never do it in any case admitting of
doubt, even in the mind of the plaintiff.    If he had any rational
ground of believing he could in any event recover more than
one hundred dollars, he ought not to be turned over to an inferior
jurisdiction, after the case has already been investigated.—*Ladd*
vs. *Hill,* 4 Vt. Rep. 164.

In actions of trespass, it is well settled, that the measure of
damages, is not limited by the value of the property.    The value
of the property is usually the actual damage.    But the jury may
even in a case of trespass *de bonis asportatis,* give consequential
or exemplary damages, and even vindictive damages ; and had a
jury in this case given the plaintiff more than one hundred dollars
damages, we know of no rule by which this court could set aside
the verdict.—*Ladd* vs. *Hill,* 4 Vt. R 164.—*Southwick, Cannon
& Warren* vs. *Merrill,* 3 Vt. 320.

It is next urged that the report should be set aside for the error
of the referees in admitting the naked declarations of the plaintiff.
This was no doubt incompetent testimony.    It had no legal or
moral tendency to show the truth.    It only went at most to show

FRANKLIN,
January,
1836.

Learned
vs.
Bellow

that the plaintiff had made contradictory statements. This might result from interest or want of integrity, but it clearly had no possible tendency to mislead the minds of the referees,nor do they intimate that they relied upon it in any sense, in deciding the case. Indeed they could not, if they were rational men. The plaintiff had distinctly admitted a fact against his interest. His showing that at other times he had asserted the fact to be otherwise, would not in any sense qualify his admission. And although the testimony was improperly admitted, yet as it had no tendency to mislead the referees, and did not mislead them, so far as we can learn, it is no sufficient reason for setting aside the report.

It has been repeatedly decided by this court, that the proceedings of referees, are to be presumed to be correct unless the contrary is made to appear.—*Hogaboom* vs. *Herrick*, 4 Vt. 196.—*Stevens* vs. *Pearson*, 1 Vt. 503.—*Bliss* vs. *Rollins*, 6 Vt. 529.

Since the decision of the cases, establishing the doctrine, that where referees intend to pursue the law, which would tend to a given determination of the case, but misapply it and thus come to a different result, that their report will be set aside, it is becoming common for referees to conclude all their reports with the same general clause, which is found in the report in this case. The cases of Johns vs. Stevens, 3 Vt. 308, and Hasletine vs. Smith, 535, were not intended to establish the doctrine that the proceedings before referees would be reviewed in the court in the same manner this court will examine the proceedings of the county court on writ of error. They establish this principle, that if referees adopt any rule of action, whether law, equity or arithmetic,and so fail in its application as to come to a different result from that to which the correct application of their own rule of decision should have brought them, and this is clearly shown, then their report will not be accepted. This is not very different from the well known rule applied to awards, that even at law they will be set aside for evident mistake.

But it is not to be tolerated for a moment that, in the case of every reference in the county court, which is really taking the case from the court and putting it before a tribunal of the parties' selection, the court shall on the return of the report sit to adjudge their whole proceedings and determine just how much of the testimony was relevant and how much was not, and if any part of the proceedings did not conform to the strictest rules of law, on trials to the jury, that the cause must be recommitted. This would es-

FRANKLIN,
January,
1836.

Learned
vs.
Bellows

tablish literally endless litigation.   And no maxim is of more universal application than *Interest Reipublicae sit finis litium.*   And if it is desirable it should be any where applied it is to their domestic tribunals.   It could in no sense subserve the ends of justice that such a course of litigation to embroil a neighborhood should be established.   These domestic tribunals, when they keep by the great principles of right are as likely to do right as any other, but when they attempt a rigid adherence to technical rules, they are fortunate not to be misled.   We cannot see that in this case the testimony could have misled the referees.

It was further argued that the receipt, although given while the suit was pending, should *bar* the action.   This could not be pleaded as a technical release, unless the doctrine of Judge Swift were to obtain. 1 Dig. 300. It could only be used as evidence to show an accord and satisfaction of the subject matter of the suit.   The writing does not express any such contract.   The plaintiff indeed objects that this defence should have been pleaded to the action, and unless specially pleaded could not be urged as a defence before the referees.   This objection is of the same character with the defendant's objection to the report on the ground of receiving plaintiff's declarations to qualify or contradict his admissions.   It is not expected that referees will require special pleadings and sit to try formal issues either of law or fact.   All that is expected is that the suit will be tried on the merits, and no motion in arrest would be entertained after report, for any defect in the pleadings, or even for the total want of all plea.

But we cannot doubt that the parties did not intend this receipt should bar this suit.   The amount in controversy, the fact that the defendant was only nominally interested, and that the ultimate liability rested on the creditor, and that no allusion is made to any suit whatever in the receipt, fully show such could not have been the plaintiff's intention.   And in these general releases courts have been very liberal in examining all the circumstances of the parties and the manner of giving them in order to come to the intention of the parties, 1 Swifts Dig. 300, 301 14—Petersdorff 203 and 4 and notes. *Morris* vs. *Philpot,* 2 Modern 279 *Knight* vs. *Cole* 1 Lev. 273 —The word "demands" is indeed very general, but has no natural fitness to express a matter now in suit, and when followed by the words "notes and accounts" every one must conclude it was used in its restricted signification, as in common parlance, synonymous with notes and accounts.   A merchant or mechanic speaks of his "demands", he intends to express only "notes and accounts."

A release of all actions does not include causes of action (14 Rt. 203) Release of all "actions and *demands*" does not release a legacy. And a general release will not effect *trust* obligations, *Cole* vs. *Knight* 2 Mod. 279, 1 Lev. 235. We are well satisfied this receipt should not be construed to bar this action. Judgment of County Court affirmed.