### COOLIDGE WHITE AND OTHERS *v.* ISHAM WHITE, Executor of COOLIDGE WHITE.

*Quære*, As to the construction, which should be put upon a devise in these words,—" I give to my beloved wife one third part of all my real and personal estate, and in addition to that I give her one cow, ten sheep and one hundred dollars in money, to have at her disposal during her natural life, or as long as she remains my widow." But, *per* REDFIELD, J., the intent of the testator would seem to have been, to place at the absolute disposal of the wife all the estate devised to her, and that this, as to the personal estate at least, would include the right of transfer by gift, or sale.

In order to entitle the court to revise the decision of a referee in matter of law, he must either refer the question of law to the determination of the court, in such a manner as to make the result of his finding depend upon that determination, or it must appear to the court, that the referee, intending to follow the law, has mistaken it, by which he is brought to a different result from that which he would have reached, had he known what the rule of law was; and this mistake must be obvious, or clearly made to appear to the court.

White et al. *v.* White, Ex'r.

APPEAL by the defendant from a decree of the probate court, charging him, as executor of Coolidge White, deceased, with ten sheep and with one third of the personal estate of the testator, devised by him to his wife. The devise was in these words,—"I give to my beloved wife one third part of all my real and personal estate, and in addition to that I give her one cow, ten sheep and one hundred dollars in money, to have at her disposal during her natural life, or as long as she remains my widow." The widow of the testator had deceased, subsequent to his death, but, previous to her decease, she had conveyed to the appellant, by deed, all her interest in the real and personal estate of the testator. The appellant had charged himself, in his account, with the cow and the one hundred dollars in money devised to the widow. The case was referred by the county court, under a general rule of reference, by consent of the parties, to the determination of Charles K. Williams.

The referee, after stating the facts found by him upon a claim, in reference to which no question was subsequently made, reported as follows;—"The appellees farther claim, that the executor should ' be charged with one third of the personal estate of the testator, ' which was bequeathed to the widow, being $579.66, and with ten ' sheep. I disallowed the charge, being of opinion, that it was, by ' the will of the said Coolidge White, which is referred to and made ' part of the case, given to his widow, and by her deed, bearing date ' November 27, 1841, which is also part of the case, conveyed abso-' lutely to the said Isham White. I have not been more particular ' in stating the case, because I find, that when this reference was ' entered into, it was understood by all the parties thereto, that the ' reference should be final between the parties, and decisive of all ' questions of law, or fact, which should arise therein. Yet never-' theless I intended to put a legal construction on the will; and that ' construction led to the rejection of the claim last mentioned."

The plaintiffs filed exceptions to the report, alleging that the referee had erred in matter of law in the portion of the report above recited. The county court, November Adjourned Term, 1847,—HALL, J., presiding,—accepted the report, and rendered judgment thereon for the appellant. Exceptions by plaintiffs.

*D. E. Nicholson* for plaintiffs.

*Foot & Hodges* for defendant.

The opinion of the court was delivered by

REDFIELD, J.   The questions presented in this case are not free from difficulty.   In regard to the true construction of this will no member of this court feels any certain confidence in his opinion; and in our inclinations we are equally divided in regard to the real intention of the testator,—which must of course govern, if it can be ascertained.

For myself, I think there is strong ground to believe, that the referee has put the true construction upon the will, so far as the personal estate is concerned; but I see very clearly, that it might be decided either way, without difficulty.   It has been at some times doubted, whether a life estate in chattels, or money, could be created by will; but that seems now to be admitted.   But I think no court would so construe a legacy, unless such intention were expressed in very clear and unequivocal language.   The natural presumption in regard to personal estate is, that the whole interest was intended to be given, unless something else is clearly expressed.   And in regard to real estate it is ordinarily intended, that a life estate merely was intended to be conveyed, when no words of inheritance are used, unless an intention to give the fee is *clearly expressed.*

There seems to be no doubt in the present case, that the effective words of gift are ample to convey the whole estate, unless restricted by the limitation and the conclusion of the whole bequest to the widow.   There are some grounds, upon which I think it is reasonable to suppose, that the limitation is not intended to operate upon the one third of the personal estate.   The general bequest is the same proportion of the estate, which the law gives to the widow,— one third.   The testator would hardly expect her to be satisfied with less, than what she could insist upon in opposition to the will,— especially when he was imposing a limitation, which, if applied to the whole, might determine her interest even before her death, and when, too, by waiving the provisions of the will, she could entirely escape from one limitation, and from both, as to the personal estate.

I conjecture, then, that the testator, by one third of the real and personal estate might have supposed he had given to his widow what the law would give ; and, in addition thereto, he gave the cow and ten sheep and one hundred dollars.  I take his words, then, literally, that all this estate was to be at her absolute disposal during life, if she remained the testator's widow.  The term " *disposal*," as applied to personal property, is one of very extensive import, even if limited as to time, and may well include a gift, or sale, I think, and, as such, was intentionally used by the testator, I think, in its broadest sense, with a view to trust that wholly to his wife.

It is not necessary to say, how far this word has the same import, as applied to real estate ; I think it admits of more question.  The disposal of real estate during one's life may not naturally include either a gift, or sale.

It may be said, too, that this limitation only applies to the *additional articles* given, beyond what the law would give.  And I would prefer either construction to setting up a life estate in these chattels upon any doubtful phraseology.

But upon the question, whether, in a case like the present, this court can revise the decision of the referee, we are agreed, that we cannot, without carrying the matter of revision farther, than it ever has been carried,—which we do not intend to do.  1. This is a general reference, upon the express condition of the statute, that the award, or report, shall be final between the parties, that is, final as to the case,—which must involve both law and fact.  2. It is obvious to us, that the parties must have intended something more than a mere reference of the facts, reserving the questions of law for the consideration of the court; else they would have had the case committed to the referee, as a commissioner, which is the common course, and would have secured the result the party now seeks.  3. The cases upon this subject all seem to require, that, in order for the court to revise the decision of a referee, in matter of law, he must either refer that question to the determination of the court, in such a manner as to make the result of his finding depend upon the determination of such questions of law as arise upon the report, or else it must appear to the court, that the referee, intending to follow the law, has mistaken it, by which he is brought to a different result, from that which he would have reached, had he known

what that rule was; and this mistake must be obvious, or clearly made to appear to the court.

That the referee does not make his report depend upon any decision of the court, in regard to this property, is too apparent to require discussion. It is briefly and imperfectly that he states the question at all, and with an evident intimation, that in his opinion the court have little to do with the grounds of his determination, in case of a general reference. In that we think he is right. If the party did not intend to refer all questions in the case to the decision of the referee, or to his discretion, whether *he* would refer them to the court, he should, as he might have done, restricted his authority in the submission, which would form part of the rule. Unless this is done, the case, in the language of some of the English judges, is, for all the purposes of trial, transferred to the court of the arbitrator; and he may make a general report, if he choose, and will ordinarily be expected to do so, unless he prefer to do otherwise. Courts certainly cannot complain of referees, for not shifting their own work off upon the court.

But the referee here may have mistaken the law. Does that appear? It can hardly be said, that it *clearly* appears to this court, that he mistook any *rule of law.* What rule of law is there, which applies to the case, which the referee did not fully understand? None. The only governing rule of the case was, to decide it according to the intent of the parties, as gathered from the words used, with reference to the subject matter and the situation and circumstances of the parties. No doubt the referee so understood the law. And this intention is matter of inference, conjecture, presumption, or judgment; and it is impossible for this court to say, or for any one to say, with certainty, that the referee did not reach that intent, and in a legal way; and unless we could clearly see that, we could not reverse the judgment of the county court, accepting that report. No two members of this court had precisely the same views in regard to this case; which shows it to be one of extreme doubt. If we should reverse the judgment, and make the executor liable, there is, in our opinion, an equal chance, that it will then be wrong; and when the parties have elected their own judge, to decide the whole case, we think we may resort to his judgment, to determine an equipoise in the opinion of this court.

White et al. *v.* White, Ex'r.

It is by no means certain, that we get all the facts, important to the determination of the true construction of the will. The referee more than intimated that, in his report. And it is morally certain to us, that he did correctly understand every rule of law applicable to the subject. Had he told us, that, intending to decide according to law,—and perhaps even without that,—and being in doubt as to the true construction of the will, he admitted evidence of the declarations of the testator, both before and after the making of the will, as to his intentions, and that he decided the case mainly upon such evidence, no doubt the court would set aside the report. But here has been no mistake of any rule of law, no clear and certain mistake of any kind, and this court cannot interfere.

The only cases, which I find in the Vermont Reports, where this court have set aside the report of referees, are *Johns* v. *Stevens*, 3 Vt. 308,—where there was a clear mistake in a *rule* of law,—and *Hazeltine* v. *Smith*, Ib. 535,—where there was an evident mistake of fact. Many other cases have come before this court, where *errors of law* had intervened, and where the referees said they intended to decide *according to law*. But the court were not fully satisfied, that such errors of law led to any wrong result. *Eddy* v. *Sprague*, 10 Vt. 216. *Learned* v. *Bellows*, 8 Vt. 79. In the first case Prentiss, Ch. J., says, "If the referee state all the circumstances of the case, and it appear, that he has decided contrary to law, the report, if it appear, that he meant to follow the law, will be set aside;"—and he also states, that in the present case these are stated "specially for the opinion of the court." This is the basis of all our decisions upon the subject, and has not been extended, but rather restricted, by subsequent decisions; and the English decisions put the subject upon much narrower ground. But even that case falls far short of the one at bar.

Judgment affirmed, with costs, and to be certified to the probate court.