WILLIAM MARTIN *v.* TOWN OF WELLS, APPELLANT.

*Constables.　Towns.　Reference and Referees.*

A certified copy of a record of a justice's judgment rendered in the State of New York, where justice courts are not courts of record, is admissible in this state to prove the judgment, there being legal proof that the alleged justice was at the time of the rendition of the judgment a duly appointed and qualified justice of the peace.

Suits may be brought and maintained against a town after the death of a constable for his default as such in the service of processes during life.

The legal presumptions are in favor of the proceedings of referees, therefore the burden is on the party seeking to set them aside to show that some error has intervened. The court in this case failed to find error in the decision of the referee, upon the facts detailed in the report.

ACTION on the case brought to recover of the town of Wells damages for the default of its constable in not making service of two writs of attachment. The case was referred and the referee reported in substance as follows: The plaintiff offered in evidence what purported to be a record of two judgments in his favor —one against Isaac Winchell, rendered by Stephen Thomas, a justice of the peace, on the 13th day of September, 1861—debt, one hundred dollars, and costs $1.35; also a judgment against said Winchell and Stephen Van Guilder, on the said 13th of September, 1861, for $27.49 debt, and $1 25 costs, which purported record was objected to by defendant's counsel. The objection was over-ruled, and the same admitted as evidence. The plaintiff also offered in evidence the justice docket in said cases, which was admitted under objection.

These transcripts of record have attached the certificate of Philander C. Hitchcock, clerk of Washington county, that Samuel Thomas was, on 23d of September, 1861, a duly elected and qualified justice of the peace, etc., and the certificate of John T. Hoffman, governor of the state of New York, that Philander C. Hitchcock was, on the said 23d of September, 1861, clerk of Washington county, state of New York, etc., in the usual form.

The question of the admissibility of the said purported record, docket and proof, is submitted to the court. It appeared that by the laws of the state of New York, justices' courts are not courts of record.

The plaintiff introduced in evidence two writs in his favor, one against Isaac Winchell, and the other against said Winchell and Stephen Van Guilder, each signed by Smith Hitt, justice of the peace, and made returnable in Pawlet, in the state of Vermont, and dated 27th of July, 1866.

On the 27th day of July, 1866, Robert Wakeley was the legal constable of the defendant town, and duly authorized to serve said writs according to the precept thereof, and on said day, the plaintiff caused said writs to be put into the hands of said Wakeley, as such constable, by Oscar Thompson, his agent and attorney, and then and there directed him, the said Wakeley, to attach two horses, a wagon, and a pair of harnesses, as the property of the said Winchell, and told him that he would find the same property at the farm of Hiram Francis, in Wells, said farm being about three miles from the house of Wakeley, where he then was at the time the writs were delivered to him. It appeared that Winchell and also the plaintiff and his attorney were residents in the state of New York. On the same day that the writs were delivered to Wakeley, he went with them to said Francis's place, and made inquiries of Francis about Winchell and the horses, wagon and harnesses. Francis informed Wakeley that Winchell was there, and had been at work on his farm for some time, and that he had two horses, that the wagon and harnesses were then there, but the horses had been turned out into a large pasture, and had got into the woods, or had escaped, but that Winchell and Van Guilder were then in pursuit and looking for them, and Wakeley did not see said horses or Winchell. Francis advised Wakeley to get a bond of indemnity against liability for attaching the property, as some question might arise about the property. Thereupon Wakeley left Francis's place, and went to Granville, several miles, for the purpose of seeing said Thompson, but he was absent from home, and Wakeley returned home without seeing him, and made no further efforts to attach the property. The horses, wagon and

harnesses, were the property of Winchell. The wagon and harnesses were within the reach of Wakeley when he was at Francis's place, and were worth thirty dollars, but Wakeley's directions were to attach the horses, wagon and harnesses, and nothing was said about attaching the wagon and harnesses without also attaching the horses, and the referee finds that it was not the duty of Wakeley to attach the wagon and harnesses without attaching the horses. This decision of the referee is submitted to the court upon the facts. The referee finds that Wakeley could have, with due diligence, and such diligence as an officer is bound and required to perform and exercise in the service of writs of attachment, found and attached said horses, wagon and harnesses, and made service of said writs on said Winchell, and that said property was subject to attachment where it was at said Francis's place in Wells, Vermont. The horses were worth two hundred dollars.

Soon after Wakeley left Francis's place, Winchell returned there with the horses, and on the same night, having learned that an officer had been there to attach the horses, left the place, and took with him the horses, wagon and harnesses, into the state of New York, where, by the laws of that state, the property was exempt from attachment and levy of execution, and where the plaintiff could not make it available to pay his debt. The property was of sufficient value to pay and satisfy the amount specified as the judgments of the plaintiff as set up in said writs, and the plaintiff might have availed himself of the proceeds of the property in payment of his debt, if the same had been attached. The plaintiff has not been able, nor could he collect his debt of Winchell since the time that the writs were put into the hands of Wakeley, and the same is not now collectable, but the debt of plaintiff against Winchell and Van Guilder could have been collected by the plaintiff, by due diligence, at any time, and can now be collected.

It appeared in evidence that Wakeley died before this suit was brought, and the defendant's counsel claimed that the suit could not be sustained against the defendant. The referee ruled otherwise. The referee intended to decide all questions and points on the trial before him according to law.

The referee further reports, that Wakeley had no knowledge, or means of knowing where the said horses were, or that he could find them, other than what information he obtained from said Francis, at his house, and that was, that the horses had not been seen that day; that they had escaped from the pasture where they had been put, either the night before, or the night but one before, and that it was feared that they had escaped and gone back to Granville, where they had been kept.

It appeared that after Wakeley left Francis's place, Winchell and Van Guilder returned with the horses, having found them at quite a distance from the house, not in the lot where they were put, and in the woods, and in a situation not to be seen from Francis's place, and where it was difficult to find them.

Whether, under the circumstances, the said Wakeley exercised due diligence, and such diligence as officers are bound and required to exercise in the service of writs of attachment, the referee submits to the court upon the facts herein reported.

Upon the report of the referee, the court at the March term, 1870, Wheeler, J., presiding, rendered judgment for the plaintiff for ninety-one dollars nineteen cents damages, and costs, to which the defendant excepted.

The referee also reported the facts upon which the court found the amount $91.19, for the plaintiff, but no question was made with reference to that part of the case.

*Marcus D. Grover* and *J. B. Beaman,* for the defendant.

*Fayette Potter,* for the plaintiff.

The opinion of the court was delivered by

Royce, J. The first question in this case arises upon the decision of the referee in admitting as evidence the records of the two judgments against Winchell, and Winchell and Van Guilder. In *Blodgett* v. *Jordan,* 6 Vt., 580, it was held that a certified copy of a record from a justice of the peace in New Hampshire was the appropriate evidence of a judgment rendered by him. And in *Carpenter* v. *Pier,* 30 Vt., 81, Aldis, J., says that this may be regarded as the settled law of the state. In *Blodgett* v. *Jordan,* it was conceded that the justice was *de facto* justice ; and here the same fact was fully and properly proved by the certificates of the clerk of the county and the governor of the state. Justice courts in New York are not courts of record, and the above decisions are full authorities for the correctness of the decision of the referee upon this question. The copies of record having been properly admitted, renders it unnecessary for us to decide whether the justice's docket was properly admitted or not. This evidence

was merely cumulative, and showed just what was proven by the copies of record, and no more.

It was claimed before the referee inasmuch as the constable, Wakeley, died before this suit was brought, that it could not be sustained against the town. The right of action accrued during the life-time of the constable, and we do not see how his death could defeat or suspend it. The Gen. Sts., ch. 15, § 30, provide that towns shall be liable to make good all damages that shall come to any person by reason of the neglect or default of any constable of the town. The same chapter, in section 26, provides that constables, before entering upon the duties of their office, shall give bonds to the town in such sums and with such sureties as the selectmen may require, conditioned for the faithful performance of their duties. And there is a further provision which requires the constable to give an additional bond if the selectmen require it :—thus putting it in the power of towns to keep themselves fully secured against all claims that may be made upon them on account of the neglect or default of their constable. It cannot have been intended that the liability of the town should be dependent upon the life of the constable. His death does not invalidate the securities which the town holds to secure the faithful performance of his duties, and any one claiming damages on account of his neglect or default, has a right of action against the town, and is not obliged to resort to the estate of the constable for indemnity.

The only remaining question is as to the liability of the town upon the facts found and reported by the referee. Did the constable exercise that diligence in endeavoring to serve the writs and make the attachments which the law required ? The referee has found that the constable, with due diligence, and such diligence as an officer is bound and required to perform and exercise in the service of writs of attachment, could have found and attached the property. If the report had concluded here, this finding of the referee would have been regarded as conclusive upon this question. But he further reports the evidence upon which he found said facts, and submits the question to the determination of the court, whether he was justified in finding said facts or not.

The referee says that he intended to decide all questions and

points on the trial before him according to law. And it was held in *Johns* v. *Stevens*, 3 Vt., 308, that where a referee in his report stated the facts and grounds on which he founded his decision, and it appeared that he intended to follow the law and decide on the legal rights of the parties, the question of law arising upon the facts reported was properly before the court, and subject to revision. In *Bliss* v. *Rollins*, 6 Vt., 529, WILLIAMS, Ch. J., explains or qualifies the above rule by saying that when referees intend to follow the law, and on a doubtful point make a mistake, yet this is not always a reason for setting aside their report, unless the mistake evidently led them to a wrong conclusion on the whole case. The same rule was applied in *Larnerd* v. *Bellows*, 8 Vt., 79, and *Eddy* v. *Sprague*, 10 do., 216. The above cases are cited more to show the inclination of the courts to make every reasonable intendment in support of reports of referees, than for their direct applicability to any question arising in this case ; for we are unable to see in what particular the referee undertook to follow the law, and so mistook it that he thereby came to a wrong conclusion upon the whole case. And inasmuch as the proceedings of referees are presumed to be correct, in *Hogaboom* v. *Herrick*, 4 Vt., 131, *Stevens* v. *Pearson*, 5 do., 503, *Bliss* v. *Rollins*, 6 do., 529, and *Larnerd* v. *Bellows*, 8 do., 79, the burden is upon the party seeking to set them aside to show that some error has intervened. We are to presume that the referee adopted the correct legal rule as to the degree of diligence required of the officer, and whether he exercised such diligence was a question of fact for the referee to determine. The report of referees upon questions of fact submitted to them must ordinarily be held as conclusive. These tribunals are selected by the parties, and unless it is made to appear that they have violated known and acknowledged principles of justice, the parties should be compelled to abide the result of their action. Reports of referees have been properly likened to awards of arbitrators, and it was decided in *Vanderwerker et al.* v. *Vt. Central R. R.*, 27 Vt., 130, that a mistake in matter of fact, in misjudging evidence, or contracts, or admissions of parties, would not invalidate an award, unless the arbitrator was misled and deluded and so far misapprehended the case that

55

he failed to exercise his real judgment upon it. The most that can be claimed here is that the referee erred in judgment. We do not find evidence in the report that would warrant us in the conclusion that he committed any error. He was in a position to properly judge of the evidence and circumstances which were brought before him, and by disregarding his findings we should open the case without any satisfactory evidence that the result would or ought to be different from that arrived at by him.

The judgment of the county court must be affirmed.