## BURLEIGH v. CLOUGH.

By his last will, H. devised to his wife,—if she should be living at the time of his decease,—all his estate, real, personal, and mixed, to her use and disposal during her natural life; and " what is remaining at her decease, undisposed of by her," the testator devised to D., and his heirs and assigns forever. *Held*, that the wife of the testator took by the will an estate for life, with a power to defeat the remainder over; and D. took a vested remainder, and not an executory devise.

H. died, and his wife, having taken possession of the property given to her by the aforesaid will, consisting of both real and personal property, and being also possessed of other real and personal property, which she held and controlled in her own right, made her own will, by which, after certain special bequests, she gave to B. " all the rest and residue of [her] estate, real, personal, and mixed, wherever found, and however situated," &c. *Held*, that she did not, by force of her will, execute the power to defeat the remainder given to D. by her husband's will.

A power, technically speaking, is not an estate, but is a mere authority, enabling a person, through the medium of the statute of uses, to dispose of an interest in real property, vested either in himself or in another person.

A gift shall not be deemed an executory devise, if it can take effect as a remainder.

A remainder shall not be considered contingent, if it may, consistently with intention, be deemed vested.

A power of disposal annexed to an estate for life, although it may devest the estate in remainder, cannot enlarge to a fee an estate for life, expressly declared and limited.

Where a power is given which may be exercised by a will, it will not be executed unless there is a reference in the will to the power or to the

subject of it; or, unless the will would be inoperative without the aid of the power, and the intention to execute it became clear and manifest.

So, also, an act *in pais*, such as, for example, the use of money derived from an estate, in the only manner consistent with the profitable enjoyment of it, will not, in the absence of a manifest intention to appropriate the same, definitely and absolutely, be deemed an execution of a power over it.

APPEAL, by Benaiah P. Burleigh, and his wife, Mary Burleigh, against David C. Clough, executor of the last will of Hannah Hersey, from the decree of the judge of probate for the county of Belknap. The case is submitted on the following agreement of facts: ·

On February 21, 1867, Jacob Hersey, of Sanbornton, made his last will, containing the following provisions: "I do give, devise, and bequeath unto my wife, Hannah Hersey, if she is living at the time of my decease, all my estate, both personal and real, or mixed, wherever the same may be found, to her, the said Hannah Hersey, to her use and disposal during her natural life; and what is remaining at her decease, undisposed of by her, I give, devise, and bequeath unto Joshua E. Dennis, and his heirs and assigns forever. And if my said wife, Hannah Hersey, is not living at the time of my decease, I do give, devise, and bequeath all of said estate unto the said Joshua E. Dennis, to him and his heirs and assigns forever." Jacob Hersey died before June 18, 1867, and his will was proved on that day. Hannah Hersey took possession of the property given to her by her husband's will, which consisted of real estate, returned in the inventory of his estate at $1,365, and personal estate, returned at $1,178.64. On November 20, 1867, Hannah Hersey made her last will, in which, after certain special bequests, it is provided as follows: "I give, bequeath, and devise to Benaiah P. Burleigh, and his wife, Mary Burleigh, all the rest and residue of my estate, real, personal, and mixed, wherever found, and however situated, while they both live; and, in the event of the death of one of them, to descend to the survivor, his or her (as the case may be) heirs and assigns forever." This will, of which David C. Clough was appointed executor, was proved in June, 1869.

When Jacob Hersey made his will, on February 21, 1867, his wife, Hannah Hersey, had real and personal estate in her own right, and on the same day she disposed of her estate by a will, which was revoked by her will of November 20, 1867. Her real estate, which included the house she lived in at the time of her death, remained hers till her death, and was appraised in the inventory of her estate at $738. She also had, at the time of her death, personal estate valued at $814.97, with which the executor is charged in his account, as settled by the decree in the court of probate.

In the settlement of the executor's account of his administration of the estate of Hannah Hersey, in the court of probate, he claimed to be credited with the following items: "Delivered to Joshua E. Dennis,

executor of J. Hersey's estate, the hay cut on J. Hersey's land after Mrs. H. Hersey's death, $128." The hay was cut on land of Hersey, as is above stated. " Also, a lot of crockery which was of J. Hersey's estate, as inventoried, $5." " Paid Joshua E. Dennis, executor of J. Hersey's will, the amount of receipt for cash delivered by him as executor to Hannah Hersey, as per said receipt, dated May 20, 1867, $262.96." The $262.96 was received by Hannah Hersey, as is above stated.

Under the wills of Jacob Hersey and Hannah Hersey, the said Burleigh and wife claimed that the executor should not be credited with the aforesaid items, while under the same wills the said Dennis claimed that said executor should be thus credited. The judge of probate credited and allowed said items to the executor, and from such allowance and credit the said Burleigh and wife appealed, and the appeal is depending in this case.

The money embraced in said receipt of May 20, 1867, was not kept separate by said Hannah, and in its use by her no distinction was made between it and other money belonging to her, not derived from said Jacob. It was agreed that the said will of Hannah Hersey, executed on said February 21, might be referred to in argument, if the court should be of opinion that it is important and material; also, the administration accounts of the said Dennis and of the said Clough, as settled in the probate court. Neither Jacob Hersey nor Hannah Hersey left any lineal descendant. The wife of Joshua E. Dennis is a niece of Jacob Hersey, and the said Benaiah P. Burleigh is a nephew of Hannah Hersey.

*Pike & Blodgett* and *A. & F. A. Fowler*, for the appellants, cited and commented upon Fearne on Contingent Remainders 418 ; *Nightingale* v. *Burrell*, 15 Pick. 104 ; *Moffat* v. *Strong*, 10 Johns. 12 ; *Jackson* v. *Bull, ibid* 19 ; *Jackson* v. *Robins*, 16 Johns. 589 ; *Ide* v. *Ide*, 5 Mass. 504 ; *Harris* v. *Knapp*, 21 Pick. 412 ; *Burbank* v. *Whitney*, 24 Pick. 146 ; *Hale* v. *Marsh*, 100 Mass. 469 ; *Dodge* v. *Moore, ibid* 335 ; *Paine* v. *Barnes, ibid* 471 ; *Ramsdell* v. *Ramsdell*, 21 Me. 288 ; *Pickering* v. *Langdon*, 22 Me. 413 ; *White* v. *White*, 21 Vt. 250 ; *Stroud* v. *Morrow*, 7 Jones (N. C.) 463 ; *Flinn* v. *Davis*, 18 Ala. 132 ; *Heath* v. *Knapp*, 4 Pa. St. 228 ; *Sherman* v. *Wooster*, 26 Iowa 273 ; *Wilson* v. *McKeehan*, 53 Pa. St. 79 ; *Hayes* v. *Tabor*, 41 N. H. 526 ; *Eaton* v. *Straw*, 18 N.. H. 331 ; *Ross* v. *Ross*, 1 Jac. & Walk. 154 ; *Flanders* v. *Clark*, 1 Ves. 9 ; *Butterfield* v. *Butterfield, ib.* 133 ; *Scatterwood* v. *Edge*, 1 Salk. 229 ; *Attorney-Gen'l* v. *Hall*, Fitz. 314 ; *Jackson* v. *DeLancy*, 13 Johns. 537 ; *Love* v. *Windham*, 1 Lev. 290 ; *Richards* v. *Bergavenny*, 2 Vern. 324 ; *Seale* v. *Seale*, 1 P. Wms. 290 ; *Albee* v. *Carpenter*, 12 Cush. 382 ; *Clark* v. *Clark*, 2 Head (Tenn.) 336 ; *Henry* v. *Felder*, 2 McCord 323 ; *Moody* v. *Walker*, 3 Ark. 147 ; *Elton* v. *Easom*, 19 Ves. 73 ; *Bennett* v. *Tankerville, ib.* 170 ; *Keats* v. *Burton*, 14 Ves. 434 ; *Jackson* v. *Coleman*, 2 Johns. 392 ; 2 Redf. Wills 659, 665 ; 2 Washb. R. P. 695 ; 4 Kent's Com. 270, 334 ; Gen. Stats., ch. 174, sec. 4.

*Perley*, for the appellee, cited and commented upon *Doe* v. *Martin*, 4 D. & E. 39 ; 2 Cruise Dig. 218, sec. 67 ; 4 Cruise Dig. 186, sec. 48 ; *Yeaton* v. *Roberts*, 28 N. H. 459 ; 4 Kent's Com. 335 ; 2 Washb. R. P. 648, 335 ; *Holmes* v. *Coghill*, 7 Ves. 505 ; S. C. 12 Ves. 214 ; *Eaton* v. *Straw*, 18 N. H. 320 ; *Goodill* v. *Brigham*, 1 Bos. & Pul. 197 ; 4 Cruise Dig. 264, sec. 75 ; *ibid* 417, sec. 25 ; 4 Kent's Com. 318 ; 2 Washb. R. P. 618, 316, 325 ; *Ide* v. *Ide*, 5 Mass. 504 ; *Attorney-Gen'l* v. *Hall*, Fitz. 314 ; 2 Redf. Wills 659 ; 1 Redf. Wills 448, 680 ; 2 Washb. R. P. 371, 670 ; 2 Redf. Wills 327, sec. 12 ; *Anon.*, 3 Leon. 71 ; *Liefe* v. *Saltingstone*, 1 Mod. 189 ; *Robinson* v. *Dusgate*, 2 Vern. 181, and Raithby's note ; *Maskelyne* v. *Maskelyne*, Ambler 750 ; *Tomlinson* v. *Dighton*, 1 P. Wms. 149 ; *Nannock* v. *Horton*, 7 Ves. 398 ; *Surman* v. *Surman*, 5 Madd. Ch. 123 ; *Reith* v. *Seymour*, 4 Russ. 263 ; *Doe* v. *Wrighte*, 2 B. & Ald. 710 ; 2 Preston on Estates 81, 82 ; 6 Cruise Dig. 322, sec. 5 ; *Reid* v. *Shergold*, 10 Ves. 370 ; *Holmes* v. *Coghill*, 12 Ves. 206 ; *Jackson* v. *Robins*, 16 Johns. 537, 588 ; *Smith* v. *Bell*, 6 Pet. 68 ; *Haralson* v. *Redd*, 15 Geo. 148, 151 ; *Cook* v. *Walker*, 15 Geo. 457, 463 ; *Rubey* v. *Barnett*, 12 Mo. 3 ; *Pulliam* v. *Byrd*, 2 Strob. Eq. 134 ; *Smith* v. *Hilliard*, 3 Strob. Eq. 211, 214 ; *Denson* v. *Mitchell*, 26 Ala. 360 ; *Burwell* v. *Anderson*, 3 Leigh. 357, 358 ; *Ward* v. *Amory*, 1 Curtis C. C. 419 ; *Den* v. *Humphreys*, 1 Harr. (N. J.) 28 ; *Dean* v. *Nunnally*, 36 Miss. 358 ; *Andrews* v. *Brumfield*, 26 Miss. 115 ; *Rail* v. *Dotson*, 14 Sm. & M. 184, 185 ; *Flintham's Appeal*, 11 S. & R. 18 ; *Morris* v. *Phaler*, 1 Watts 389 ; *2d Pres. Church* v. *Disbrow*, 52 Pa. St. 219 ; *French* v. *Hatch*, 28 N. H. 331, 350 ; *Leavitt* v. *Wooster*, 14 N. H. 562 ; *Sir Ed. Clere's case*, 6 Co. 17, *b ;* *Colt* v. *The Bishop of Coventry*, Hobart 159, 160 ; *Ex parte Caswall*, 1 Atkyns 559 ; *Jenkins* v. *Keymis*, 1 Lev. 150 ; *Parker* v. *Kett*, 12 Mod. 469 ; 16 Viner 487 ; *Bennett* v. *Aburrow*, 8 Ves. 609 ; *Jones* v. *Tucker*, 2 Mer. 533 ; *Andrews* v. *Emmot*, 2 Bro. C. C. 300; 301 ; *Lovell* v. *Knight*, 3 Sim. 275 ; *Lempriere* v. *Valpy*, 5 Sim. 108 ; *Doe* v. *Roake*, 2 Bing. 497 ; *Denn* v. *Roake*, 5 Barn. & Cress. 720 ; *State* v. *Rollins*, 8 N. H. 550 ; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523 ; *Mory* v. *Michael*, 18 Md. 227 ; *Gee* v. *Graves*, 2 Head (Tenn.) 239 ; *Wilson* v. *Gaines*, 9 Rich. Eq. 420 ; *Bell* v. *Twilight*, 22 N. H. 500 ; 4 Kent's Com. 318, 322 ; *Cunningham* v. *Moody*, 1 Ves. 174 ; Fearne on Rem. 227, 228 ; *Cave* v. *Holford*, 3 Ves. 650 ; *Vanderzee* v. *Alcom*, 4 Ves. 771, 787 ; *Reade* v. *Reade*, 5 Ves. 748 ; *Maundrell* v. *Maundrell*, 10 Ves. 264 ; *Hands* v. *Hands*, 1 Term 435 ; *Varrell* v. *Wendell*, 20 N. H. 431, 436, 438 ; *Downing* v. *Wherrin*, 19 N. H. 9, 85 ; *Robinson* v. *Dusgate*, 2 Vern. 181 ; *Scott* v. *Joslin*, 26 Beav. 174 ; Sugden on Powers 104 ; Chance on Powers 45, 121 ; 8 Vin. Ab. 206 ; 1 Roberts on Wills 426, note ; *Blagge* v. *Miles*, 1 Story 426 ; *Collier's Will*, 40 Mo. 328 ; *White* v. *Hicks*, 33 N. Y. 383, 388 ; *Porcher* v. *Daniel*, 12 Rich. Eq. 360 ; *Keefer* v. *Schwartz*, 47 Pa. St. 508 ; *Johnson* v. *Stanton*, 30 Conn. 297.

FOSTER, J. The first question naturally presented by this case is, What kind of an interest or estate did Hannah Hersey take under her husband's will ? Was it a fee simple, or an estate for life ?

In considering this question, we resort, in the first instance, to the application of those elementary rules of construction which provide that every portion of the instrument must be made to have its just operation, unless there arises some invincible repugnance, or else some portion is absolutely unintelligible; and that the intention of the testator is the prevailing consideration and the supreme rule of interpretation. 1 Redf. Wills 431–433.

The words of the devise are plain and distinct : " I give," &c., " all my estate, both personal and real, or mixed "  *  *  " to her, the sa. 1 Hannah Hersey, to her use and disposal during her natural life ;" " and what is remaining at her decease, undisposed of by her, I give, devise, and bequeath unto Joshua E. Dennis and his heirs and assigns forever."

If the will had given the estate to Mrs. Hersey and her heirs, or to Mrs. Hersey, generally, without words of limitation, she would have taken, by the operative words of the will, an estate in fee; and that estate would not have been reduced below an estate in fee by the added power of disposal, because such a construction would be manifestly repugnant to the estate in fee already granted. The expression of the added power would be mere surplusage, since every estate in fee involves an absolute power of disposal of the whole.

But here the estate devised to Mrs. Hersey is expressly limited to an estate for life, with remainder in fee to Dennis : and we have no difficulty in reaching the conclusion that the intention of the testator was that she should take only an estate for life, with a power to defeat the remainder over.

The testator has used apt and explicit words of limitation to express this intention, which, to our minds, is as clear as that, by the use of equally apt and express words, he intended to give to the remainder man an estate in fee. If he had intended to give his wife an estate in fee, he would have expressed that intention by the use of such terms as he employed in the devise to Dennis, which is of the remainder to him and his heirs and assigns forever.

The question then arises, whether this intention is to be controlled by any superior rule of law ; for an intention will not avail to create an illegal or an impossible estate. *Smith* v. *Bell,* 6 Peters 68.

" There is an evident difference between a power and an absolute right of property," said Sir WM. GRANT, M. R., in *Holmes* v. *Coghill,* 7 Ves. 506. See 4 Kent's Com. 335 ; 2 Washb. R. P. *325 ; 3 Washb. R. P. *303, *315, *334 ; Williams on Real Property 249.

A power, when conferred by will, is a bare authority derived from the will. It is not an estate, and has none of the elements of an estate. It is defined by Bouvier as " an authority enabling a person, through the medium of the statute of uses, to dispose of an interest in real property, vested either in himself or in another person." See Williams R. P. 245 ; Co. Litt. 271 *b*, Butler's note 231, sec. 3, pl. 4. " A power is an authority enabling one person to dispose of the interest which is vested in another." BULLER, J., in *Goodill* v. *Brig-*

*ham*, 1 Bos. & Pul. 197. " A general power of disposition, existing as a power, does not imply ownership; in fact, the existence of such a power, as a technical power, excludes the idea of an absolute fee simple in the party who possesses the power." PARKER, C. J., in *Eaton* v. *Straw*, 18 N. H. 331.

The learned chief justice, in the same case, although he does not find it necessary, for the purposes of its decision, to controvert the opinion expressed by the appellants in the present case, that there can be no limitation over after the gift of a general power of disposition of an estate, remarks that such a proposition " is certainly not a necessary result from any legal principle;" and he adds,—" there is nothing incongruous in holding that the gift of such a power, superadded to language which might otherwise be construed as conveying an absolute fee, tends to limit the preceding phraseology, so that it is not to be construed as creating such an estate.

The appellants contend, in argument, that this will must be construed as devising a fee, because the power annexed to the devise was general, and not a mere power of appointment in favor of specified persons. She had, they say, an unqualified right to dispose of the whole property,—she was a free moral agent; and, because she could do with the property all that an owner in fee could, simply by executing the power, therefore she must *be* the owner in fee; and, by further consequence, the limitation over to Dennis is by way of executory devise, with which the right of disposition, given to Mrs. Hersey, is incompatible.

It is quite obvious that such an argument is the result of confounding the distinction between property and power. The estate given Mrs. Hersey is a property; the power of disposal, a mere authority, which Mrs. Hersey may exercise or not, in her discretion.

If B, having a general power annexed to the life estate which he has derived from A, executes that power by a sale of the property to C, the title of C is derived, not from B, who executes the power, but from A, who gave it.

" The appointer," says Mr. Washburn, " is merely an instrument; the appointee is in by the original deed. The appointee takes in the same manner as if his name had been inserted in the power, or, as if the power and instrument executing the power had been expressed in that giving the power. He does not take from the donee, as his assignee." 2 Washb. R. P. *320; 1 Sug. Pow. (ed. 1856) 242; 2 Sug. Pow. 22; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45.

This distinction between property and power being kept within view, it becomes unnecessary to controvert the proposition, supported, doubtless, by the authorities so abundantly collected by the learned counsel for the appellants, and so explicitly declared by Chancellor KENT, in *Jackson* v. *Robins*, 16 Johns. 589, that " it is a clear and well settled rule of law, that an executory devise cannot be prevented or defeated by any alteration of the estate out of which, or after which, it is limited, or by any mode of conveyance;" that where conditions are

repugnant to the estate to which they are annexed, they are void (2 Redf. Wills 659) ; that a valid executory devise cannot subsist under an absolute power of disposition in the first taker (4 Kent's Com. 270) : from all which the appellants argue that the limitation over to Dennis, being by way of executory devise, is void ;—for we are led to the inevitable conclusion that the estate limited to Dennis was not an executory devise, but a vested remainder ; and the reasons which apply to the destruction of an executory devise by joining it to a power of disposal, have no application to a remainder, limited upon an estate for life.

We cannot so well express the definition and character of an executory devise as by adopting the language of the learned counsel for the appellee, in argument : "An executory devise is a future interest, such as the rules of law do not permit to be created in conveyances, but allow in the case of wills, like an interest given after an estate in fee simple, or to arise *in futuro*, without a particular estate to support it. *Scatterwood* v. *Edge*, 1 Salk. 229. They came into use after the Statute of Wills, 32 Hen. 8, and were allowed out of indulgence to testators, that they might, without the intervention of trustees to preserve remainders, establish future interests in strict settlement beyond the reach of those who had the prior estates—4 Kent 260 ; and such being the object, it was held to be essential to a good executory devise that the first takers should have *no power* to dispose of the interest devised. If, therefore, the first taker had the power by grant from the testator to dispose of the executory devise, the .power defeated the whole object of such devises, and was held to make them inoperative though the power was not executed. Every good executory devise, as the rule would seem to be established in England, is 'inalienable, though all mankind join in the conveyance.' Scatterwood v. Edge, 1 Salk. 229 ; 4 Kent 260 ; 6 Cruise's D. 461, 465. For this reason, a power of disposition has been held to be inconsistent with the nature of such an interest. It is against this rule, even in the case of an executory devise, that PARKER, C. J., objects, in *Eaton* v. *Straw*, 18 N. H. 320."

The distinction between an executory devise and a vested remainder is elementary. An executory devise is such a disposition of lands by will, that thereby no estate vests at the devisor's death, but only on some future contingency. It needs no particular estate to support it. An estate in remainder is one limited to take effect and be enjoyed after another is determined. No remainder can be limited after the grant of a fee simple, because the tenant in fee has the whole. See *Jackson* v. *Robins*, 16 Johns. 537, 588 ; *Downing* v. *Wherrin*, 19 N. H. 9, 85.

Another elementary principle applies in cases where it may be doubtful whether an estate is an executory devise or a remainder, namely,— that a gift shall not be deemed an executory devise if it can take effect as a remainder ; and that no remainder shall be considered contingent, if it may, consistently with intention, be deemed vested.

*Blanchard* v. *Blanchard,* 1 Allen 225 ; *Doe* v. *Perryn,* 3 Term 484–489, note ; 4 Kent's Com. 202 ;—and see *Banister* v. *Henderson,* Quincy, Ms., 120.

By the terms of the will, Mrs. Hersey took two things,—an estate for life, and a power of disposal of the estate ; and it is contended that the grant of this power enlarges the estate for life to an estate in fee,—that the power becomes merged in the estate.

Now, as an estate in fee, involving the right of disposal, cannot be reduced to an estate for life, by implication, from the addition of words conferring a power of disposal, so a separate and distinct grant of a power of disposal, although it may devest the estate in remainder, cannot enlarge an estate for life, expressly declared and limited, to a fee, because the power of disposition is not inconsistent with nor repugnant to an estate for life, as we shall presently see. It is not repugnant, because, if no power of disposal had been conferred by the will, she would have still taken an estate for life, as she now takes both an estate for life and an added power of disposal.

And by this construction, the whole and every portion of the will becomes effectual, according to the manifest intention of the testator, which was, as we have no doubt, to give to his widow an estate for life at all events ; and, more than that, a power of disposition of so much of the property, even to the extent of the whole, as her needs, her comfort, or her gratification should demand ; and that the remainder, if any, should go to Dennis.

It will be found, upon examination, that a majority of the authorities to which we are referred by the appellants, which apparently go to the extent of holding that a power of disposition, annexed to an estate for life, enlarges the life estate to a fee, are cases in which the estate for life is not conferred by express terms, but arises from implication,—such implication being deemed essential, in the particular case, in order to give effect to the intention of the testator, as manifested by the whole scope of the devise. Such is particularly the case in *Ramsdell* v. *Ramsdell,* 21 Mc. 288, *Pickering* v. *Langdon,* 22 Me. 213, *Burbank* v. *Whitney,* 24 Me. 146, and *White* v. *White, Ex'r,* 21 Vt. 250. In neither of these cases is the estate for life granted by express terms of limitation. And in other cases cited to the same point, such as *Harris* v. *Knapp,* 21 Pick. 412, *Hall* v. *Marsh,* 100 Mass. 468, *Dodge* v. *Moore,* 100 Mass. 335, and *Stroud* v. *Morrow,* 7 Jones (N. C.) 463, the general expression of an opinion by the court, that those cases exhibited an estate in fee in the first taker, must be regarded as *obiter dictum,* since the real question involved was, not as to the character of the estate created by the devise, but, in the former of these cases, whether the devisee in fact, under the terms of the will, had a power of disposition,—and in the others, what was the extent of that power ?

In none of them, as I understand it, was the question raised as to the effect of the power upon the particular estate devised.

These cases, when compared with others, to some of which we shall presently refer, serve to mark this plain distinction,—that where gen-

eral words, implying an estate for life, if limited to such an estate, would manifestly defeat the intention of the testator, the intention shall control, and enlarge the estate to a fee; but if the testator in express terms give an estate for life, the intention is manifest and beyond doubt; and in such case an added power of disposition cannot enlarge the estate, contrary to the testator's intention.

Thus, in *Popham* v. *Banfield*, Salk. 236, it is holden that, where a particular estate is expressly devised, a contrary intent is not to be implied by subsequent words; or, as the same case is expressed in 2 Vern. 449, " an express estate for life cannot be enlarged by an implication, but may by express words;" and, as again expressed in the statement of the same case, in 1 P. Wms. 54, " no estate raised by implication in a will can destroy an express estate."

In *Thomlinson* v. *Dighton*, Salk. 239, it is holden that " devise to A for life, then to be at her disposal to any of her children, gives an estate for life, with power to dispose of the fee." In the argument for the defendant in the same case as reported—1 P. Wms. 149—it is said, " there are two cases that are express authorities that the wife in the principal case has but an estate for life, with a power to dispose of the fee ; and these two cases do make this very difference, viz.,—where lands are devised to one generally, and to be at his disposal, this is a fee in the devisee; but where lands are· devised to one expressly for life, and afterwards to be at the devisee's disposal, only an estate for life passes to the devisee, with a bare power to dispose of the fee ; for that (as it is said) words of implication shall not merge or destroy an express estate for life." The cases referred to are *Anon.*, 3 Leon. 71, and *Liefe* v. *Saltingstone*, 1 Mod. 189. In accordance with these views was the opinion of the court—1 P. Wms. 171.

In the case above referred to, from 3 Leon. 71, A, seized of lands in fee, devised them to his wife for life, and after her decease to give them to whom she would. The court said,—" A gave the lands expressly to his wife for life, and therefore she should not have, by implication, any further estate. But if an express estate had not been appointed to the wife, by the other words, the estate in fee would have passed." See, to the same effect, *Robinson* v. *Dusgate*, 2 Vern. 181; *Nannock* v. *Horton*, 7 Ves. 398 ; *Holmes* v. *Coghill*, 7 Ves. 505 ; S. C. 12 Ves. 206.

*Surman* v. *Surman*, 5 Madd. Ch. 123, was a " bequest of household goods, &c., after payment of debts, to the testator's wife, for life or widowhood, with power to her to sell the same as she should think proper, for her own benefit and the maintenance of testator's nephew and daughter-in-law during their minorities, with a bequest over upon the death or second marriage of the wife, of the same, or so much as should then remain, to such nephew and daughter-in-law." *Held*, that " the widow was entitled to the residue (that is, after payment of debts) for her life or widowhood, with a power to apply any part of the capital for her own benefit and the proper maintenance of the nephew and daughter-in-law during their minorities ; and that, on the death or marriage

of the widow, the remainder of the capital unapplied was well limited over."

This case distinctly shows that the uncertainty whether there will be any remainder does not vitiate the limitation over, and that the power does not enlarge the estate for life to a fee.

And see *Doe* v. *Martin,* 4 D. & E. 39, at pp. 64, 65, where Lord KENYON quotes Lord HARDWICKE as saying—in *Cunningham* v. *Moody,* 1 Ves. 174—that the effect of a power of appointment added to an estate for life " is, that the fee which was vested was thereby subject to be devested, if the whole were appointed."

And in *Reith* v. *Seymour,* 4 Russ. 263, it was holden that a gift of personal estate to the wife for life, with a direction that, after her death, one moiety thereof should be at her entire disposal, either by will or otherwise, amounts only to an estate for life in the wife, with a power of appointment.

If we turn now to the American authorities, we shall find them numerous and conclusive to the effect that where the estate for life is devised by express terms, a power of disposal of the fee, whether general or special, will not enlarge the estate. In *Jackson* v. *Robins,* 16 Johns. 537, at p. 588, Chancellor KENT says,—" we may lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee ; and the only exception to the rule is, where the testator gives to the first taker an estate for life *only,* by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion. This distinction is carefully marked and settled in the cases."

In the Virginia court of appeals this matter is considered at great length, and presented with much force by TUCKER, President, in *Burwell's Ex'rs* v. *Anderson, Adm'r,* 3 Leigh 348, particularly at pp. 356–358, where it is said " a devise to A, with power to dispose at pleasure, is considered as conveying *property,* not as conferring *power ;* for the words of power will not be permitted to take away what, without them, is expressly given. 2 Preston on Est. 81, 82 ; 13 Ves. 453. But where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different; for the express estate for life negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest. This appears to me to be very clearly established by the cases that were cited at the bar ; which, further, lay it down, that where an *interest* and not a mere *power* is conferred, the absolute property is vested, without any act on the part of the legatee ; but where a power only is given, that power must be executed, or it will fail."

Not to multiply quotations, the general principle established by the foregoing cases, and the manifest distinction between property and power, will be found laid down as the law in *Flintham's Appeal,* 11 S.

& R. 18 ; *2d Pres. Church* v. *Disbrow*, 52 Pa. St. 219 ; *Haralson* v. *Redd*, 15 Geo. 151 ; *Cook* v. *Walker*, 15 Geo. 457, 463 ; *Morris* v. *Phaler*, 1 Watts 390 ; *Rubey* v. *Barnett*, 12 Mo. 3 ; *Pulliam* v. *Byrd*, 2 Strob. Eq. 134 ; *Ward* v. *Amory*, 1 Curtis C. C. 419, and numerous other cases.

Particular reference, however, should be made to the case of *Denson* v. *Mitchell & ux.*, 26 Ala. 360, which overrules the case *Flinn* v. *Davis*, 18 Ala. 132, cited by the appellants, if that case is to be regarded as supporting their view of the matter.

In *Denson* v. *Mitchell & ux.*, it is said that " an express bequest of an estate for life negatives the intention to give the absolute property, and converts a superadded right of disposition into a mere power."

These views seem to be fully indorsed by the text writers ;—thus, Kent says (4 Com. 520, 521),—" If an estate be given to a person generally or indefinitely, with a power of disposition, it carries a fee, unless the testator gives to the first taker an estate for life only, and annexes to it power of disposition of the reversion. In that case the express limitation for life will control the operation of the power, and prevent it from enlarging the estate to a fee." See, also, 2 Washb. R. P. *371 ; Greenleaf's note to 6 Cruise 208, Devise, ch. 11, sec. 6.

In our own State the decisions seem to be not in conflict with the doctrines we have stated. Thus, in *Eaton* v. *Straw*, 18 N. H. 320, the head note is,—"A general power of disposition, existing as a power, does not imply ownership, but excludes the idea of an absolute fee simple in the party who possesses the power."

This case is cited by the appellants as an authority to the point that there can be no limitation over after the gift of a general power of disposition, which is undoubtedly true if the distinction be entirely disregarded which we have found to be so marked and plain, and the general power of disposition be applied to a general devise, without limitation of a life estate. That was the case of an executory devise, and the precise point before us did not arise, but the doctrine of the case is expressed in the head note above quoted.

In *French* v. *Hatch*, 28 N. H. 331, at page 350, Mr. Chief Justice GILCHRIST expresses, in the plainest terms, the true rule, as follows : " Where there is a devise for life, in express terms, a power of disposition does not enlarge it to a fee. But where to a general devise, without any specification of the quality of interest, an absolute power of disposition is annexed, the devisee takes a fee. This distinction is carefully marked and settled in the case of *Jackson* v. *Robins*, 16 Johns. 558, and cases cited by KENT, Ch." This case, which was a gift by will of both personal and real property expressly limited for life, necessarily involved the consideration of the distinction between a general devise and an express limitation for life. Upon this branch of the case, therefore, it is precisely in point, and seems to settle the law of this State in accordance with the doctrine declared by Chancellor KENT, in *Jackson* v. *Robins*.

And in the earlier case of *Leavitt* v. *Wooster*, 14 N. H. 551, although

the point was not presented in such manner as to require adjudication, the principle seems clearly recognized by GILCHRIST, J., in the following language: "The quantity of estate devised to her is not a matter of doubt, as she is expressly limited to an estate for life. There are numerous cases which hold that where a devise contains no words of limitation, and the payment of debts and legacies is made a personal charge upon the devisee, he takes a fee by implication, unless there are other words in the will which limit the quantum of interest. But that question does not arise in this case, as the estate of the devisee is particularly described."

In *Dennett* v. *Dennett*, 40 N. H. 498, BELL, C. J., remarks, concerning the case then before the court,—"The terms of this will, ' all the residue of my estate,' if standing uncontrolled by other expressions, would pass a fee [citing, among other cases, *Leavitt* v. *Wooster*]. They cannot be so construed here, because the devises following control the sense, and show that a life estate was intended to be given him."

The cases already cited from our own reports, together with *Weeks* v. *Weeks*, 5 N. H. 326, *Ladd* v. *Harvey*, 21 N. H. 514, *Yeaton* v. *Roberts*, 28 N. H. 459, and *Healey* v. *Toppan*, 45 N. H. 243, show that there is no distinction between real and personal property with regard to the limitation of a remainder after an estate for life, except, perhaps, in the case where the use necessarily involves the destruction of the property.

RICHARDSON, C. J., in *Weeks* v. *Weeks*, 5 N. H. 326, remarks,—"In ancient times there could be no limitation over of a chattel after a gift for life, but such a gift carried the absolute property. Afterwards a distinction was made between the use and the property. The use might be given to one for life, and then the property afterwards to another. But this distinction is now disregarded. The law admits of a limitation over by will, of a chattel interest, after a life estate in the same." To the same effect is *Ladd* v. *Harvey* and *Yeaton* v. *Roberts*, before cited.

Many of the English cases, before referred to in this connection, were bequests of personal property.

*Smith* v. *Bell*, 6 Peters 68, is a very important case in support of the general proposition that a power of disposition does not enlarge an express estate for life. It would be interesting and instructive to quote lengthy passages from the luminous opinion of Chief Justice MARSHALL, in that case, but we forbear,—commending the case to the attention of the lawyer and student, simply repeating the language of that celebrated jurist, that "the rule, that a remainder may be limited after a life estate in personal property, is as well settled as any other principle of our law."

Having determined that Mrs. Hersey took by her husband's will a life estate with a power of disposal, and Dennis a vested remainder, subject to be devested by the due execution of the power,—the next question presented is, Was the power legally executed by Mrs. Hersey's will?

The property devised to Mrs. Hersey by her husband's will consisted of real estate, returned in the inventory of his estate at $1,365, and personal estate returned at $1,178.64, making $2,543.64. In addition to this, she had, in her own right, at the time of her death, real estate returned in the inventory of her estate at $738, and personal estate returned at $814.97, making $1,552.97.

By her last will, she gave certain special bequests, the character and value of which are not indicated by the case, and then declared as follows: " I give, bequeath, and devise to Benaiah P. Burleigh, and his wife, Mary Burleigh, all the rest and residue of my estate, real, personal, and mixed, wherever found and however situated, while they both live; and, in the event of the death of one of them, to descend to the survivor, his or her (as the case may be) heirs and assigns forever."

A preliminary question is suggested, namely, Did Jacob Hersey, by his will, give to his wife a power of disposition by will of the estate devised to her? The terms of the devise in Jacob Hersey's will are,— " to her the said Hannah Hersey, to her use and disposal *during her natural life;* and what is remaining at her decease, undisposed of by her, I give, devise, and bequeath unto Joshua E. Dennis, and his heirs and assigns forever."

It is suggested by the appellee, in argument, that " Hersey and his wife were two childless people, having each separate property, not very unequal in amount; that, in addition to her own property, which might well be considered of itself adequate to her support, he gave her the use of all his property for her life, with authority to dispose of such part of it as she might need or desire, leaving what might be remaining at her decease to Dennis, to whom he gave all his property in case he survived his wife; that giving her the power to apply to her own use such part of the property as she might choose during her life would abundantly provide for her comfort and independence, without entrusting to her the power to give away by will what remained at her decease, and so defeat the remainder limited to Dennis, and would fully answer all the object which we can suppose her husband had in the provisions made for her ; " that the testator intended a substantial benefit to Dennis, and did not intend that anything of his should go by descent to the heirs of his wife, nor that any will of hers should take from Dennis what was remaining at her decease, and give it to her devisee or legatee.

The construction of his will, like hers, is to be governed by the intention of the maker, if it can be ascertained; and, supposing those circumstances alluded to to exist (which we do not understand to be controverted), they must be regarded as quite material, as affecting the question of intention.

And, in connection with the phraseology of his will, they suggest to our minds very serious doubts whether Jacob Hersey intended to give to his wife a power of disposition by will.

We do not, however, find it necessary to decide that such was not his intention.

Recurring, then, to the main question upon this branch of the case, —Was the power of disposal executed by force of Mrs. Hersey's will?

The will disposes of her estate, but makes no mention of the power, nor of the estate which was subject to the power.

The rule must be regarded as settled, by doctrine and authority of very ancient date, and of almost uniform application, that where a power is given which may be exercised by a will, it will not be executed unless there is a reference in the will to the power, or to the subject of it, or unless the will would be inoperative without the aid of the power, and the intention to execute it became clear and manifest. 4 Kent's Com. 334; 1 Jarman on Wills 628, note.

. In *Lovell* v. *Knight*, 3 Sim. 275, SHADWELL, V. C., said,—" I apprehend it to be *perfectly settled* that whenever a will is couched in such terms as that, upon the face of it, it appears to express an intention to pass the general property which may belong to the party making the will, such a will shall not be deemed an execution of the power with regard to any specific property."

This remark was applied to the case where a married woman, having power to appoint leaseholds and stock, by her will, executed and attested as required by the power, but not referring to it, gave to her husband the whole of her property, both real and personal, and whatsoever she might possess at her decease. It was held that this was not an execution of the power.

This case is expressly affirmed in *Lempriere* v. *Valpy*, 5 Sim. 108, where the V. C., at page 121, adverts to what he calls the *known rule* laid down in *Standen* v. *Standen*, 2 Ves. jr. 589; *Standen* v. *McNab*, 6 Bro. P. C. 193, 2d ed.; *Bennett* v. *Aburrow*, 8 Ves. 609; *Jones* v. *Tucker*, 2 Mer. 533; and *Jones* v. *Curry*, 1 Swanst. 66. In *Standen* v. *Standen*, *ante*, the Lord Chancellor (LOUGHBOROUGH) declares the rule to be as expressed in *Sir Edward Clere's* case, 6 Co. 17, *b*, that a general disposition will not dispose of what the party has only a power to dispose of, unless it is necessary to satisfy the words of the disposition.

In *Jones* v. *Curry*, *ante*, the M. R., in giving judgment, said,—" This will contains no words which will be without operation, unless referred to the power; on the contrary, the testatrix uses terms of generality— ' all my estate and effects of whatever denomination.' That clause would embrace all her real and personal property, but would it go beyond that?" And in *Webb* v. *Honnor*, 1 Jac. & Walk. 352, the M. R. said,—" In this instrument there is nothing to show that the testator meant to dispose of anything but his own property. Every part of it is satisfied by giving all that he was possessed of."

The only exception to the requirement of a reference to the power or the subject-matter of it, in order to the execution of the power, evidently is the fact that the will, in the given case, must be wholly inoperative without the aid of the power. " A general roving description of property in a will is not sufficient " to execute a power, said the V. C. in *Rooke* v. *Rooke*, 2 Drew & Smale 38, 44. " If you can find evidence of the testator's intention to dispose of the property

which is the subject of the power, then the court will give effect to that intention."

BEST, C. J., in *Doe* v. *Roake*, 2 Bing. 497, 504, expresses the doctrine and the rule thus : " It has long been settled, that an express declaration of the intent to execute a power is not necessary ; on the other hand, no terms, however comprehensive, although sufficient to pass every species of property, freehold and copyhold, real and personal, will execute a power, unless they demonstrate that the testator had the power in his contemplation, and intended by his will to execute it." See the remarks of Lord Chief Justice HOBART, in the *Commendam case*, Hob. Rep. 159, 160, and, for a review of the antecedent English and American cases, the opinion of Judge STORY, in *Blagge* v. *Miles*, 1 Story 426, where he says, at page 446,—" I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power." And see *Gratwick's Trusts*, 1 L. R. Eq. 177 ; *Attorney-Gen'l* v. *Wilkinson*, 2 L. R. Eq. 817 ; *Johnson* v. *Stanton*, 30 Conn. 297.

Now, although we can have no doubt that the rule of the common law in England, and wherever in this country it has not been changed by legislation, is in accordance with the doctrine declared by these numerous and most respectable authorities, we cannot refrain from expressing our extreme dissatisfaction with this supposed condition of the law.

Perhaps Lord ELDON used too strong language, if he made the remark attributed to him by Sir John Leach, in *Hughes* v. *Turner*, 3 Myl. & K. 688, that the rule, " although professed to be adopted in order to further the intention of the testator, in nine cases out of ten defeats that object."

However that may be, and whether the rule is the result of a correct interpretation of the law or not, its practical operation was found to work injustice in so many instances that British legislation was invoked for a remedy, and it became enacted by the Statute of Wills of 7 Wm. IV & 1 Vic., ch. 26, sec. 27, " that a general devise of real or personal estate shall operate as an execution of a power of the testator over the same, unless a contrary intention shall appear on the will."

"By this statute," says Judge STORY, in a note to *Blagge* v. *Miles*, before cited, " all these refined and subtle distinctions, in relation to the execution of powers, are now swept away in England, and the doctrine has at last settled down in that country to what would seem to be the dictate of common sense, unaffected by technical niceties."

See, also, the remarks of HOAR, J., in *Avery* v. *Meredith*, 7 Allen. 397, where the rule of the common law is repudiated.

But the rule is too clearly recognized and established in our own State to be disregarded. See *Bell* v. *Twilight*, 22 N. H. 500. And while we cannot let the occasion pass without expressing our doubts as

to its practical justice, we feel quite confident that its application to the present case will do no wrong, but, on the contrary, will fully effectuate the intention of both Jacob and Hannah Hersey with regard to the disposition of their several estates.

Our conclusion, in view of all the apparent circumstances, as well as the settled rules of construction, is, that Mrs. Hersey, by her last will, did not execute,—as she did not intend to execute,—the power conferred by the will of her husband.

The counsel for the appellants refer us to but two cases in support of their position upon this branch of the case. Neither of them is in point. In the one—*Jackson* v. *Coleman,* 2 Johns. 392—there was no limitation of a life estate to the wife, the testatrix, and no power to be executed by her; in the other—*Harris* v. *Knapp,* 21 Pick. 412—as we have already observed, the question was not as to the execution, but related only to the extent of the power.

The appellants, however, insist that, even in the position in which this case is placed by the opinions now expressed, their third reason for appeal must be allowed.

This is, because the judge of probate, in the final settlement of the account of the executor of Mrs. Hersey's will, allowed him the sum of $262.96 for cash which he had paid to the executor of Jacob Hersey's will, which sum was the amount of money that had been paid to Mrs. Hersey from her husband's estate.

This money was a part of the gross amount of personal estate derived from her husband, the whole being, as appraised, $1,048.96; and this money was not kept separate by Mrs. Hersey, and, in its use by her, no distinction was made between it and other money belonging to her, not derived from her husband.

Upon this point, the position of the appellants seems to be, that, since Mrs. Hersey received personal estate from her husband to the amount of $1,048.96, and had at her death only $814.97, therefore she must have executed her power of disposal over the difference, which is $233.99, and that to that extent, at least, the executor's claim for $262.96 was improperly allowed; but, further than this, that the commingling of the money derived from her husband with her own money, and the indiscriminate use of the whole, constitute a disposal of the money, within the meaning of the will, and was an execution of the power to devest the remainder.

But the argument, so far as it is based upon an exhibition of figures, fails; for, by examination of the inventory of Mrs. Hersey's estate, to which we are referred by the case, it appears that the articles of personal property which she received from her husband's estate, and which at the time of her death remained unchanged in form, are not included in the $814.97, but are returned in the inventory separately as " an inventory of articles which belonged to the estate of Jacob Hersey, and which is in controversy as to title."

These articles amount to $342.77. There are also the avails of the hay cut on the land, and which would be a part of the proceeds of

Mrs. Hersey's estate for life, amounting to $128, and these sums, added to the rest of the personal estate, make the total $1,285.74, instead of $1,048.96,—or $236.78 more than the amount derived from her husband's estate.

These figures, however, do not afford us much aid, while they furnish no support to the appellant's argument; for it does not appear how much personal property Mrs. Hersey had in her own right, at the time of her husband's death, nor how much of that derived from her husband was of such character that it would necessarily be destroyed and consumed in the using.

A change of form in the nature of personal property, which can only be profitably enjoyed by making such change, is by no means to be regarded, *per se,* as an execution of a power of disposition over it. The profitable use of money is obtained only by its investment in securities paying interest, or in property, like live stock, for example, on a farm, from the labor of which profit may be derived. The remainder-man is not defrauded nor harmed—his estate is not devested nor diminished—if the money,—the $262.96 limited to him by Jacob Hersey's will,—comes to him at last through Mrs. Hersey's executor, whether that money, in the meantime, has been usefully employed or kept " laid up in a napkin."

The tenant for life is entitled to the use of the money. She is not required to give security for it to the remainder-man, and her executor is only bound to account for the fund, not for the identical money, precisely as he has done in this case. *Weeks* v. *Weeks,* 5 N. H. 326; *French* v. *Hatch,* 28 N. H. 352; *Healey* v. *Toppan,* 45 N. H. 243.

In *Healey* v. *Toppan,* it is said that " there is nothing in the fact that real and personal estate are bequeathed together, at the same time, and in the same general or residuary bequest, that tends to show that the testator intended that the personal property, or any part of it, should be enjoyed *in specie* by the tenant for life."

A change, therefore, in the precise form of the property, whether it be goods, perishable or otherwise, or money, in order to the practical and profitable use of the same by the tenant for life, cannot be assumed to be the exercise of absolute dominion over it, and a conversion of it.

Money is not property of that perishable nature which is necessarily consumed in the using of it. The use may be enjoyed, and the equivalent avails of the same thing retained for the benefit and as the property of him to whom the principal is limited.

Any lawful use of the money, as tenant for life, is not to be deemed an execution of the power of disposal of it, in the absence of any act evincing that intent. What is relied upon by the appellants as an execution of the power, is just what the tenant for life would naturally do in the exercise of her rights as tenant for life.

The principles which we have already recognized apply fully in this connection; and as a conveyance of property, by deed or will, will not be regarded as an execution of a power over it, in the absence of any reference to the power or the subject of it evincing an intention to

execute it, unless the deed or will must otherwise be inoperative,—so, here, such an act *in pais* as the use of this money, in the only manner consistent with the profitable enjoyment of it conferred by her husband's will, cannot be regarded as an execution of a power over it.

The equivalent sum of money paid by the executor of Jacob Hersey's will has been paid to the remainder-man by the executor of Mrs. Hersey's will, in pursuance of the intention, not only of the original testator, but also, so far as appears or can be inferred, in pursuance of the design of Mrs. Hersey, and the duty imposed upon her.

The conclusion of the whole matter is, that the reasons for appeal are disallowed, and the decree of the probate court is affirmed.